**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Harris, | No. CV-25-04761-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Experian Information Solutions Incorporated, | |
| Defendant. | |

At issue is Defendant Experian Information Solutions Incorporated's ("Experian") Motion for Judgment on the Pleadings, (Doc. 15), and Experian's Motion to Stay Discovery, (Doc. 22).  For the following reasons, Experian's Motion for Judgment on the Pleadings will be **granted**, and the Motion to Stay Discovery will be **denied as moot**.

## I.    FACTUAL BACKGROUND

On January 1, 2022, Plaintiff Diana Harris purchased an exercise bike from Target's website for $529.29, using her Discover credit card.  (Doc. 1 at ¶¶ 43, 59.)  In February 2022, Harris paid off the full balance of her Discover account (the "Account"), including the amount paid for the exercise bike.  (*Id.* at ¶¶ 45–46.)  In March 2022, Harris contacted Target to initiate a return of the bike.  (*Id.* at ¶ 47.)  In early April, Target informed Harris that it could schedule UPS to retrieve the item.  (*Id.* at ¶¶ 49–50.)  UPS picked the bike up from Harris's residence on April 5, 2022, and delivered it to a Target facility in Indiana on April 8, 2022.  (*Id.* at ¶¶ 51–52.)

By June 2022, Harris had not received a refund for the exercise bike.  (*Id.* at ¶ 54.)

Harris contacted Discover, explaining that she had not received a credit for the returned bike and enclosed proof of the UPS pickup and delivery to Target. (*Id.* at ¶¶ 54–57.) On September 1, 2022, Discover issued Harris a credit for the bike. (*Id.* at ¶ 58.) However, in October 2022, Harris learned that Discover had reversed the credit and recharged the $529.29 to her Account after an "additional review" in which Discover determined the charge was valid. (*Id.* at ¶¶ 59–60.) Harris alleges that Discover reversed the credit because Target told Discover that the bike was never returned. (*Id.* at ¶ 61.)

Between October 2022 and February 2023, Harris engaged in numerous communications with Target, which maintained that the bike had not been returned. (*Id.* at ¶¶ 62–63.) In January 2023, Target advised Harris that it would resolve the matter directly with Discover, and Harris relayed this information to Discover. (*Id.* at ¶¶ 64–66.) On February 16, 2023, Target sent Harris an email "approving" a refund of $539.17 plus tax, to be credited to her original form of payment. (*Id.* at ¶¶ 68–70.) Harris, however, never received a credit to her Account. (*Id.* at ¶ 71.) Instead, she received a Target gift card. (*Id.*)

Harris did not pay the balance on her Account, so on February 28, 2023, Discover suspended both the Account and Harris's second Discover account, citing "the continued delinquency." (*See id.* at ¶¶ 77–78.) Two months later, on April 28, 2023, Discover closed both accounts. (*Id.* at ¶ 80.)

Harris alleges that beginning in June 2023, Discover reported to Experian, a Credit Reporting Agency ("CRA"), that the Account had been charged off with a balance of $811, and that Experian thereafter included that information in Harris's credit file and consumer reports. (*Id.* at ¶¶ 15–16, 82–84.) Harris disputed the charged-off status and the $811 balance with Experian twice—first in the summer of 2024 and again on September 22, 2025—each time describing the Target and Discover controversy in detail and attaching supporting documentation. (*Id.* at ¶¶ 85–88, 110–14.) In response to each dispute, Experian sent an Automated Consumer Dispute Verification ("ACDV") to Discover; Discover verified the reported information as accurate; Experian communicated that result

to Harris; and Experian did not correct or delete the reporting. (*Id.* at ¶¶ 89–90, 106, 115–16.)

Harris alleges that Experian's reporting of the charged-off status and $811 balance caused her to suffer a number of adverse credit actions between March 2025 and September 2025, including the suspension of her Home Equity Line of Credit with PNC Bank, an increase in her Annual Percentage Rate by American Express, closure of an account by BMO Bank, N.A., denial of a credit application by CitiBank, denial of an insurance application by Allstate, and denial of an account application by Skyla Credit Union. (*Id.* at ¶¶ 133–57.) Harris further alleges that she has expended significant time and effort disputing the reporting and has suffered emotional distress, including stress, anxiety, embarrassment, and sleeplessness. (*Id.* at ¶¶ 160–64.)

Harris filed her Complaint on December 17, 2025, alleging that Experian violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by failing to follow reasonable procedures to assure maximum possible accuracy of Harris's credit information as required by § 1681e(b) and by failing to conduct a reasonable reinvestigation of her disputes as required by § 1681i. (*See generally id.*) Harris brings this action individually and asserts two counts. Count I alleges that Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of Harris's consumer reports. (*Id.* at ¶¶ 165–72.) Count II alleges that Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Harris's disputes regarding the charged-off status and balance reported on her Discover account. (*Id.* at ¶¶ 173–81.) Harris seeks actual, statutory, and punitive damages, together with attorneys' fees and costs, alleging that Experian's conduct was willful or, in the alternative, negligent. (*Id.* at ¶¶ 171–72, 180–81.)

On February 4, 2026, Experian answered the Complaint. (Doc. 13.) On February 26, 2026, Experian filed the instant Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 15.) Harris responded, (Doc. 18), and

Experian replied, (Doc. 19).[1]

On March 25, 2026, Experian filed a Motion to Stay Discovery pending resolution of the Motion for Judgment on the Pleadings.  (Doc. 22.)  Harris responded, (Doc. 24), and Experian replied, (Doc. 25).

## II.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate when, taking all the factual allegations in the complaint as true, "the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A court's analysis "under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) (quotation marks omitted).

Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In making this determination, courts do not accept legal conclusions as true, nor do they consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)).  For the purposes of ruling on a Rule 12(c) motion, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

---

[1]    The parties did not request oral argument, and it is not necessary, so this motion is decided without holding a hearing.  *See* LRCiv 7.2(f).

- 4 -

## III.    DISCUSSION

Experian moves for judgment on the pleadings on the ground that Harris has failed to plausibly allege an inaccuracy in her consumer report, as required to state a claim under both § 1681e(b) and § 1681i of the FCRA.  (*See* Doc. 15 at 4.)

### A.    Inaccuracy Under Ninth Circuit Law

The FCRA requires CRAs to "follow reasonable procedures to assure the maximum possible accuracy" of consumer reports, 15 U.S.C. § 1681e(b), and to "conduct a reasonable reinvestigation" upon receiving notice of a consumer dispute, *id.* § 1681i(a)(1)(A).  To state a claim under either provision, a plaintiff must first make "a prima facie showing of inaccurate reporting by the CRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quotation marks omitted).  Information on a consumer report is "inaccurate" if it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (citation omitted).  Without a cognizable inaccuracy, courts "need not consider whether [the CRA] had reasonable procedures or conducted reasonable reinvestigations." *Id.* at 759.

Harris's own allegations establish that Experian did not engage in inaccurate reporting.  Harris used her Discover credit card to purchase an exercise bike for $529.29. (Doc. 1 at ¶¶ 43, 59.)  Discover initially credited her Account for the charge but later reversed that credit after concluding that the charge was valid.  (*Id.* at ¶¶ 58–60.)  Target ultimately refunded Harris by issuing her a Target gift card rather than a credit to her Account.  (*Id.* at ¶¶ 70–71.)  Harris did not pay the resulting balance on her Discover card, and Discover suspended and closed the Account for "continued delinquency."  (*See id.* at ¶¶ 77–81.)  On these facts, Experian's reporting that the Account was charged off with an outstanding balance is neither "patently incorrect" nor materially misleading.  *See Shaw*, 891 F.3d at 756.  The Complaint's allegations confirm that the charge was placed on the Account, that the balance went unpaid, and that Discover closed the Account as a result.

Harris's grievance is properly directed at Target and Discover, not Experian.  At

bottom, Harris believes she should not be required to pay the $811 balance because she returned the exercise bike and Target "approved" a refund to her Discover card.  (Doc. 1 at ¶¶ 51–53, 70; Doc. 18 at 7–8.)  But it is not Experian's responsibility to resolve a dispute between Harris, Target, and Discover over who is ultimately responsible for the $811 balance under the applicable credit and purchase agreements.  The Ninth Circuit has squarely held that such disputes are not cognizable against a CRA under the FCRA.  In *Carvalho v. Equifax Info. Servs., LLC*, the Ninth Circuit explained that "credit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."  629 F.3d 876, 891 (9th Cir. 2010).  "A CRA is not required as part of its reinvestigation duties to provide a legal opinion" on the validity of a consumer's debt; rather, "determining whether the consumer has a valid defense is a question for a court to resolve in a suit against the creditor, not a job imposed upon consumer reporting agencies by the FCRA."  *Id.* at 892 (cleaned up).

The facts here are materially indistinguishable from those in *Carvalho*.  There, the plaintiff received medical treatment, her insurer declined to pay, and the resulting debt was reported on her credit file.  *Id.* at 881–82.  The plaintiff disputed the debt, and did not pay it, on the ground that her insurer had wrongfully refused to pay.  *Id.* at 882.  The Ninth Circuit affirmed dismissal of her FCRA claims because "a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound her reasons for default are."  *Id.* at 891.  The same is true here.  Harris availed herself of the exercise bike through a purchase financed by her Discover card, Discover treated the charge as valid, and Harris did not pay the resulting balance.  Whether Target's issuance of a gift card satisfied any obligation owed to Harris, and whether that excuses her obligation to pay Discover, are questions governed by her agreements with Target and/or Discover.  They are not questions Experian is required or equipped to resolve.  *See id.* at 892.

- 6 -

Nor does the documentation Harris allegedly provided Experian alter that conclusion. Whatever supporting documentation Harris submitted establishes, at most, a potential defense to the debt—a matter to be pressed against Discover or Target, neither of whom is named as a defendant here. *See id*. Harris's reliance on *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (9th Cir. 2023), does not change that conclusion. Harris cites *Chaitoff* for the proposition that "a CRA might be liable if it ignores or overlooks documents of unquestioned authenticity, even if they relate to a legal dispute." *Id.* at 815; (Doc. 18 at 7). But even assuming Harris submitted documents of "unquestioned authenticity"—proof of shipment and Target's refund "approval"—those documents do not themselves resolve the inaccuracy she alleges. They establish, at most, that Harris returned the bike and that Target purported to approve a refund; they do not establish that Target's issuance of a gift card failed to satisfy its refund obligation, or that any such failure relieved Harris of her obligation to pay Discover. Resolving those questions still requires the kind of contractual interpretation that *Carvalho* places beyond a CRA's reinvestigation duties. *See Carvalho*, 629 F.3d at 891–92. *Chaitoff* does not stand for the broader proposition that a CRA must credit a consumer's documents whenever they bear on a legal dispute. Where, as here, the documents do not resolve the underlying dispute, *Chaitoff* affords Harris no relief. A consumer's argument that a CRA is ignoring a "documented discrepancy does not change the fact that [she] has failed to plead sufficient facts that there is an inaccuracy in the [CRA's] reporting to begin with." *Silva v. Santander Consumer USA Inc.*, 2025 WL 3215772, at *3 (W.D. Wash. 2025) (cleaned up). Harris has therefore failed to plausibly allege a cognizable inaccuracy under binding Ninth Circuit law.

**B.    The Alternative "Objectively and Readily Verifiable" Standard**

Harris urges me to apply a different standard, adopted by several other circuits, that an inaccuracy is actionable under the FCRA if it is "objectively and readily verifiable." (Doc. 18 at 5–6.) The Ninth Circuit has not adopted the "objectively and readily verifiable" standard. *See Silva*, 2025 WL 3215772, at *3 (noting "there is no definitive Ninth Circuit

case law adopting the 'objectively and readily verifiable test' for § 1681e(b) claims").[2] *Carvalho* and *Shaw* therefore remain binding. But even if I were to apply the standard Harris urges, her claims would still fail.

The "objectively and readily verifiable" standard is not satisfied when resolving the alleged inaccuracy requires "bespoke attention and legal reasoning." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023). "[I]naccuracies that turn on legal disputes are not cognizable under the FCRA." *Id.* Instead, "if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." *Id.* at 271. Other circuits applying this framework have reached the same conclusion in the context of contractual disputes. *See Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024) ("The problem for [plaintiffs] is that the alleged inaccurate information is not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer."); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) ("[A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable.").

The same reasoning applies here. To determine whether the $811 balance was accurately reported, Experian would have to obtain and interpret at least two separate agreements: Target's purchase and return policies, to assess whether Harris was entitled to a cash refund rather than a gift card; and Harris's credit agreement with Discover, to assess

---

[2] None of the remaining cases Harris cites changes the analysis. Harris's reliance on *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022), for the proposition that the Ninth Circuit has called the "legal vs. factual" framework into question is misplaced. (*See* Doc. 18 at 6.) *Gross* addresses the investigative obligations of *furnishers* like Discover under § 1681s-2(b), not the obligations of *CRAs* like Experian under §§ 1681e(b) and 1681i. *See id.* at 1253. Indeed, *Gross* expressly distinguishes the two, citing *Carvalho* and explaining that because CRAs "lack any direct relationship with the consumer . . . they must rely on the representations of the furnishers who usually own the debt," whereas furnishers "stand in a far better position to make a thorough investigation of a disputed debt." *Id.* (cleaned up). Harris also cites *Hebrank v. Early Warning Services, LLC*, 2025 WL 1148801 (D. Ariz. 2025), which applied the "objectively and readily verifiable" standard at the motion-to-dismiss stage. *See id.* at * 4. *Hebrank* is not binding, and the question whether that standard displaces *Carvalho* and *Shaw* was not squarely presented there. In any event, Harris's claims fail under either standard.

whether Target's alleged failure to provide a cash refund relieves Harris of her obligation to pay the charge. Those are not inquiries that can be resolved by a "straightforward answer," *Holden*, 98 F.4th at 1368, and they plainly involve the kind of "in-depth legal analysis" that courts—not CRAs—are equipped to perform, *Roberts*, 131 F.4th at 251. *See also Mader*, 56 F.4th at 271 (FCRA does not require CRAs to "resolve unsettled legal questions").

The out-of-circuit district court decisions Harris cites do not compel a different result. Harris relies on *Kanani v. Experian Information Solutions, Inc.*, 2024 WL 3729484 (M.D. Fla. 2024), and *Brutus v. Yes Companies Fred, LLC*, 754 F. Supp. 3d 1161 (N.D. Fla. 2024), for the proposition that whether a debt is owed is "objectively and readily verifiable." (Doc. 18 at 9–10.) Both cases are distinguishable. The *Kanani* plaintiffs alleged that an oral "walkaway agreement" with their landlord extinguished their debt entirely, and the court held that whether such an agreement existed was a "straightforward application of law to facts." 2024 WL 3729484, at *3. The *Brutus* plaintiff alleged his landlord had duplicated charges in a manner apparent on the face of a single document. 754 F. Supp. 3d at 1164–65. Harris alleges neither. She does not contend that the charge never occurred, that the balance was misstated, or that the debt was wiped out by agreement. Although Harris frames her dispute as a purely factual one—"did Plaintiff return the bike?", (Doc. 18 at 9)—resolving whether the $811 balance is accurate requires more than verifying the return. As discussed above, it requires determining whether Target's gift card satisfied any refund obligation owed to Harris and whether any deficiency relieves Harris of her obligation to pay Discover under the cardholder agreement. Those questions require interpreting written agreements, and *Kanani* itself acknowledged that such inquiries fall outside the "objectively and readily verifiable" category. *See* 2024 WL 3729484, at *3 (contrasting the plaintiffs' allegations with cases requiring interpretation of written agreements about which courts had reached "conflicting conclusions" (quotation marks omitted)).

Harris's claims thus fail under either standard. Accordingly, because Harris has not

made the prima facie showing of inaccuracy required under either § 1681e(b) or § 1681i, both counts fail as a matter of law.  Experian's Motion for Judgment on the Pleadings, (Doc. 15), will therefore be granted.

### C.    Leave to Amend

Defendant's motion for judgment on the pleadings is granted without leave to amend, as any amendment would be futile.  Harris contends that she could plead additional facts regarding her return of the bike, Target's approval of a refund, and Experian's failure to consider that evidence.  (Doc. 18 at 10.)  But I assumed the truth of those allegations throughout this Order, and they do not cure the legal deficiency in Harris's claims, which turns on the nature of the underlying dispute rather than the strength of the evidence supporting her position.  *See Carvalho*, 629 F.3d at 893 ("Because we hold that Carvalho cannot make a prima facie case of inaccurate reporting, we conclude that amendment to include other claims requiring inaccuracy would be futile.").

### D.    Motion to Stay Discovery

Experian's Motion to Stay Discovery, (Doc. 22), seeks a stay of discovery pending resolution of the Motion for Judgment on the Pleadings.  Because I granted the Motion for Judgment on the Pleadings, the Motion to Stay Discovery will be denied as moot.

**IT IS ORDERED** that Experian's Motion for Judgment on the Pleadings (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Discovery, (Doc. 22), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 1st day of May, 2026.

Honorable Sharad H. Desai
United States District Judge

- 10 -